## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**PIERRE VAUGHN and GAIL VAUGHN,**                                 Case No.

        *Plaintiffs,*

**v.**

**STATE OF ILLINOIS, THE COUNTY OF WILL, JAMES W. GLASGOW, JOHN R. CONNOR, KELLY J. KRAJNIK and GARY LAWSON;**

        *Defendants.*

---

## COMPLAINT

    **NOW COME** Plaintiffs, PIERRE VAUGHN and GAIL VAUGHN, by and through their attorney, The Law Office of Keith Altman, and filing their Complaint against Defendants, hereby state the following:

## BACKGROUND

1. This action is seeking injunctive relief against Defendants The State of Illinois, The County of Will, James W. Glasgow, John R. Connor, Kelly J. Krajnic and Gary Lawson ("Defendants") for violations of 42 U.S.C.S. § 1983.

2. As a result of Defendants violation of due process, Plaintiffs have suffered a serious loss of time and finances.

## PARTIES

3. Plaintiffs Pierre Vaughn and Gail Vaughn ("The Vaughns" or "Plaintiffs") are citizens and domiciliary of the State of Missouri.

4. Defendant the State of Illinois is a statehood in the United States of America.

5. Defendant the County of Will is a county located within the State of Illinois.

6. Defendant James W. Glasgow is employed by The State of Illinois as Will County's State Attorney at all times relevant to this action.

7. Defendant John R. Connor was employed by The State of Illinois as the Assistant State Attorney at all times relevant to this action.

8. Defendant Kelly J. Krajnik was employed by the State of Illinois as a Forensic Scientist for the Illinois State Police, Division of Forensic Services, Joliet Forensic Science Laboratory at all times relevant to this action.

9. Defendant Gary Lawson is employed by the State of Illinois as Illinois State Police at all times relevant to this action.

## JURISDICTION & VENUE

10. This action arises under the laws of the United States, and therefore this Court has Subject Matter jurisdiction pursuant to 28 U.S.C. §1331.

11. This Court also has Subject Matter jurisdiction pursuant to 42 U.S.C. § 1983, which prohibits the deprivation of constitutional rights or rights secured by the laws of the United States by persons acting under the color of state law.

12. This Court properly exercises jurisdiction over Defendants the State of Illinois and the County of Will.

13. This Court properly exercises personal jurisdiction over the Individual Defendants because, on information and belief, the Individual Defendants are domiciled within the Northern District of Illinois or have availed themselves to suit in the division.

14. This action is properly venued in the Eastern Division of the Northern District of Illinois because the defendants are located within the division or have availed themselves to this division and a significant portion of the events occurred within the division.

## FACTS

15. Christopher Vaughn's wife and three children were fatally shot in Will County, Illinois on June 14, 2007.

16. Christopher Vaughn was shot but did not sustain life-threatening injuries.

17. As the scene was processed, DNA evidence was collected from the blood on the retracted front passenger seat belt.

18. Kimberly Vaughn was seated in the front passenger seat of the vehicle.

19. Kimberly Vaughn died of a gunshot wound.

20. The entry point of the gunshot wound was under Kimberly Vaughn's chin and shot in an upward trajectory.

21. On June 18, 2007, blood from the passenger seat belt was submitted by Crime Scene Investigator Robert Deel to the Joliet Forensic Science Laboratory for DNA testing and analysis.

22. The DNA analysis was conducted by Kelly J. Krajnik, a forensic scientist employed at the Joliet Forensic Science Laboratory.

23. On June 27, 2007, Kelly J. Krajnik called and spoke to Gary Lawson, Illinois State Police to discuss the lab results of the DNA tests. *Exhibit A.*

*24.* Krajnik later called and spoke to State Attorney James Glasgow and Assistant State Attorney John Connor to discuss the lab results of the DNA tests. *Exhibit A.*

25. A "draft" Laboratory Report was prepared by Kelly J. Krajnik dated July 3, 2007.

26. In the draft report the swab from the seat belt was labelled as "10A". *Exhibit B.*

27. The test results determined that the blood on the passenger side front seat belt "matches the DNA profile of Christopher Vaughn.". ***Exhibit B.***

28. The draft Laboratory Report was addressed to Gary Lawson, Illinois State Police and copied to Crime Scene Investigator Robert W. Deel and Assistant State Attorney John Conner.

29. The draft Laboratory Report listed Christopher Vaughn and Kimberly Vaughn as suspects

30. A grand jury was convened on July 25, 2007.

31. Illinois State Police officer Gary Lawson knowingly falsely testified at the Grand Jury hearing that according to the DNA tests, the blood on the front passenger side seatbelt was that of *Kimberly Vaughn.*

32. On July 25, 2007, a grand jury returned an indictment against Christopher Vaughn on four counts of first-degree murder.

33. A second Laboratory Report was prepared by Kelly J. Krajnik and dated July 26, 2007. ***Exhibit C.***

34. The second Laboratory Report was addressed to Gary Lawson, Illinois State Police and copies to Crime Scene Investigator Robert W. Deel and Assistant State Attorney John Connor.

35. The blood sample "10A" from the front passenger seatbelt remains unchanged. No additional information was provided. No information was altered. Christopher Vaughn is now the sole suspect listed.

36. The second Laboratory Report listed only Christopher Vaughn as a suspect.

37. The false testimony given before the Grand Jury that the blood on the front passenger side seat belt belonged to Kimberly Vaughn led the Grand Jury to believe that Kimberly Vaughn was strapped in with her seat belt extended, at the time of the shooting.

38. The irrefutable DNA evidence reveals that her seat belt was retracted as she turned around to shoot her three children, shoot Christopher Vaughn, and then inflict a fatal gunshot wound under her chin.

39. The blood of Christopher Vaughn was smeared onto her seat belt when he tried to fasten her seat belt to drive them to get help.

40. At all relevant times, the Defendants were officials and/or employees of the State of Illinois acting in their official capacities, under the color of authority.

41. A state's attorney is in a special position of trust: he must seek convictions of those who violate the laws of Illinois while seeking to do justice. Before entering upon the respective duties of their office, the state's attorneys are commissioned by the governor, and take the following oath or affirmation:

" I do solemnly swear (or affirm, as the case may be), that I will support the constitution of the United States and the constitution of the state of Illinois, and that I will faithfully discharge the duties of the office of state's attorney according to the best of my ability."

(55 ILCS 5/3-9001) (from Ch. 34, par. 3-9001).

42. The current Illinois Rules of Professional Conduct state that the duty of a public prosecutor is to seek justice, not merely to convict. The prosecutor in a criminal case shall:

    (a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;

    (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

    Rule 3.8: Special Responsibilities of a Prosecutor

43. The State's Attorney of Will County, Illinois at all relevant times was James W. Glasgow, and acting in his official capacity under the color of authority, allowed false testimony or suborned perjury, to be submitted in the grand jury proceedings

regarding Christopher Vaughn.  His conduct violated the Rules of Professional Conduct and his Oath of Office.

44. The Assistant State's Attorney of Will County, Illinois at all relevant times was John R. Connor, and acting in his official capacity under the color of authority, allowed false testimony or suborned perjury, to be submitted in the grand jury proceedings regarding Christopher Vaughn.  His conduct violated the Rules of Professional Conduct.

   The mission of the Illinois State Police is to promote public safety with integrity, service, and pride to improve the quality of life for the citizens of Illinois. (https://isp.illinois.gov/Home/Mission)  The oath of the Illinois State Police i I solemnly vow to the people of Illinois, upon my honor as an officer and citizen, to discharge the duties of an officer of the Illinois State Police to the best of my ability, to adhere to the rules and regulations of the Illinois State Police, and to adopt the Agency's mission and goals into my everyday life. I pledge to be honest in thought, word, and deed; to maintain unimpeachable integrity; to be just, fair, and impartial; to be steadfast against evil and its temptations; and to give my utmost to protect the rights, property, and lives of our citizens. I shall strive to give thoughtful, intelligent obedience to the commands of my

superiors, to make my conduct friendly but impartial, courteous but firm, and charitable to the inadvertent violator. But I shall never compromise with crime and shall, at all times, uphold the Constitutions and laws of my country and the state of Illinois. (https://isp.illinois.gov)

45. The Illinois State Police Detective at all relevant times was Gary Lawson, and acting in his official capacity under the color of authority, violated his oath when he falsely testified in the grand jury proceedings regarding Christopher Vaughn.

46. The Division of Forensic Services of the Illinois State Police strives to improve the effectiveness of the criminal justice community and enhance public safety by delivering accurate, complete, and timely crime scene evidence collection and forensic laboratory analysis. (https://isp.illinois.gov/Forensics)

47. The National Code of Professional Responsibility for Forensic Science and Forensic Medicine Service Providers is intended to promote integrity and respect for the scientific process and encouraging a research-based culture. To increase public confidence in the quality of forensic services, each forensic science and forensic medicine service provider must meet the requirements enumerated below:

1. Accurately represent his/her education, training, experience, and areas of expertise.

2. Pursue professional competency through training, proficiency testing, certification, and presentation and publication of research findings.

3. Commit to continuous learning in the forensic disciplines and stay abreast of new findings, equipment and techniques.

4. Promote validation and incorporation of new technologies, guarding against the use of non-valid methods in casework and the misapplication of validated methods.

5. Avoid tampering, adulteration, loss, or unnecessary consumption of evidentiary materials.

6. Avoid participation in any case where there are personal, financial, employment-related or other conflicts of interest.

7. Conduct full, fair and unbiased examinations, leading to independent, impartial, and objective opinions and conclusions.

8. Make and retain full, contemporaneous, clear and accurate written records of all examinations and tests conducted and conclusions drawn, in sufficient detail to allow meaningful review and assessment by an independent person competent in the field.

9. Base conclusions on generally-accepted procedures supported by sufficient data, standards and controls, not on political pressure or other outside influence.

10. Do not render conclusions that are outside one's expertise.

11. Prepare reports in unambiguous terms, clearly distinguishing data from interpretations and opinions, and disclosing all known

associated limitations that prevent invalid inferences or mislead the judge or jury.

12. Do not alter reports or other records, or withhold information from reports for strategic or tactical litigation advantage.

13. Present accurate and complete data in reports, oral and written presentations and testimony based on good scientific practices and validated methods.

14. Communicate honestly and fully, once a report is issued, with all parties (investigators, prosecutors, defense attorneys, and other expert witnesses), unless prohibited by law.

15. Document and notify management or quality assurance personnel of adverse events, such as an unintended mistake or a breach of ethical, legal, scientific standards, or questionable conduct.

16. Ensure reporting, through proper management channels, to all impacted scientific and legal parties of any adverse event that affects a previously issued report or testimony.


48. The Illinois State Forensic Scientist at all relevant times was Kelly J. Krajnik, who acting in her official capacity under the color of authority violated the oath of the Illinois State Police when she tampered with the Laboratory Reports by submitting one labelled "draft" and submitting another one after the Grand Jury hearing to the other Defendants.

49. On information and belief, Kelly J. Krajnik was directed by the other Defendants to mark the first Laboratory Report as a "draft" and remove Kimberly Vaughn as a suspect on the second Laboratory Report, though the scientific findings in the report were identical. These changes were inappropriate and unethical and not supported by the evidence.

50. The 2010 Code of Professional Responsibility for Forensic Science and Forensic Medicine Service Providers is instructive as to what is considered to be ethical conduct.

51. Kelly J. Krajnik falsified a Laboratory Report by labelling it "draft" which included Kimberly Vaughn as a suspect.

52. Each defendant jointly and severally violated their duties and responsibilities, and their oaths of office which led to the indictment of Christopher Vaughn.


## CAUSES OF ACTION

### COUNT ONE - VIOLATION 42 U.S.C. § 1983

53. Plaintiffs incorporate by reference Paragraphs 16-52 of this Complaint as if fully copied and set forth at length herein.

54. Plaintiffs have a constitutionally protected property interest in their finances.

55. Furthermore, Plaintiffs have a constitutionally protected liberty interest in their time and freedom of travel.

56. The Fifth and Fourteenth Amendments of the U.S. Constitution provide, in pertinent part, that "no person shall be deprived of life, liberty, or property without due process of law."

57. Given that Plaintiffs' property and liberty interests were at stake, Plaintiffs were entitled to seeing a fair and impartial hearing regarding the actions in accordance with the professional rules of ethics and conduct attributed to Defendants' roles in the action.

58. Plaintiffs had a right to valid and verified DNA results to be brought before the Grand Jury.

59. Plaintiffs had a right to sworn testimony to be a truthful representation of the findings.

60. The process of DNA evidence reporting was devoid of due process and completely arbitrary at every stage.

61. The Defendants, together, conspired to defraud the Court by misrepresenting the evidence.

62. Defendants violated their oaths of office.

63. As a result, Christopher Vaughn was indicted and ultimately convicted.

64. Plaintiffs were harmed and deprived of their rights, privileges and immunities secured by the Constitution and federal laws.

65. Plaintiffs' damages include lost time and income when they travel approximately six hours one way to see their son, Christopher Vaughn, who is currently incarcerated in Pinckneyville Correctional Center.

66. As a direct and proximate result of Defendants' actions, Plaintiffs continue to suffer ongoing violations of their due process rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court grants relief as follows:

(1) Injunctive relief against and Defendants in their individual and official capacity:

(a) Correct the July 3, 2007, "draft" Laboratory Report to remove "draft";

(b) Correct the July 26, 2007, Laboratory Report to list Kimberly Vaughn as a suspect.


Date: August 8, 2022                    Respectfully Submitted,

Keith Altman, Esq. (P81702)
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

# Exhibit A

**ILLINOIS STATE POLICE**
Division of Forensic Services and Identification
Forensic Science Command

## TELEPHONE CONVERSATION RECORD

Talked with _Gary Lawson_____ of _ISP Zone 3 815-651-4263_

on _06/27/07_____ _10:00 am_____ Case No. _J07-5345_
   Date                        Time

Call placed by: _____ Agency    _X_ Laboratory    _____ Other

Reason for Call:

I called and spoke to Gary Lawson. I gave him verbal DNA results on the latest batch of Exhibits. He asked me to inform the State's Attorney's office. I'll give them a call.

6/27/07 10:35am: I left a vm for ASA John Conner (815-727-8624). I asked him to call me back to get the DNA results on this lastest batch of Exhibits. ⌐ 06/22/07

6-27-07 (~2pm): ASA John Conner + SA James Glasgow called me back. I went through

Action or Follow Up: all the DNA results on this latest batch. They want to have another meeting - maybe on Friday morning. They'll let us know, bt. (vm)

6-27-07 (~4pm): I called + spoke to ASA John Conner. I asked him if they want statistics on any/all of the crime scene stains. Yes - they want statistics on all of the crime scene stains. etc. (vm)

Signed _____ _ill_____

J07-5345:7

# Exhibit B

**ILLINOIS STATE POLICE**
Division of Forensic Services
Joliet Forensic Science Laboratory
515 East Woodruff Road
Joliet, Illinois 60432-1260
(815) 740-3543 (Voice) * 1-(800) 255-3323 (TDD)

Rod R. Blagojevich
*Governor*

Larry G. Trent
*Director*

July 3, 2007
**LABORATORY REPORT**

SA GARY LAWSON
ISP DOO ZONE 3
16648 SOUTH BROADWAY
LOCKPORT IL 60441

Laboratory Case #J07-005345
CSSC Case #3599-07-1038-9-1
Agency Case #07-14749LP

OFFENSE: Death Investigation
SUSPECTS: Kimberly Vaughn/Christopher Vaughn
VICTIMS: Abigail Vaughn/Cassandra Vaughn/Blake Vaughn

DRAFT

The following evidence was submitted to the Joliet Forensic Science Laboratory by R. Deel on June 18, 2007:

| EXHIBIT | DESCRIPTION |
|---|---|
| 1A1 | Swab from the outside of the gun barrel (blood indicated) |
| 6A1 | Substance collected from the bullet |
| 6B1 | Swab from the bullet |
| 7A | Portion of swabs from the driver's seat (blood indicated) |
| 10A | Swab from the seat belt (blood indicated) |
| 11A | Portion of swabs from the center console (blood indicated) |
| 12A | Portion of swabs from the passenger side of the center console (blood indicated) |
| 13A | Portion of swabs from the passenger seat (blood indicated) |
| 14A | Blood standard: Kimberly Vaughn |
| 20B1 | Portion of swab from (the top right rear) pants of Christopher Vaughn (blood indicated) |
| 21A | Portion of swab from the lower right back of the jacket (blood indicated) |
| 21B | Portion of swab from the lower left back of the jacket (blood indicated) |
| 21C | Portion of swab from the back of the left arm area from the jacket (blood indicated) |
| 21G1 | Portion of swab from the bottom right sleeve cuff (blood indicated) |
| 21H1 | Portion of swab from below the left zipper pocket (blood indicated) |
| 22A | Buccal standard: Christopher Vaughn |

The following evidence was submitted to the Joliet Forensic Science Laboratory by R. Deel on June 22, 2007:

| EXHIBIT | DESCRIPTION |
|---|---|
| 26A | Portion of swab from the driver's seat back, right side (blood indicated) |
| 27A | Portion of swab from the center console at the driver's side cup holder (blood indicated) |
| 28A | Portion of swab from the front passenger seat, left front (blood indicated) |

ISP DOO ZONE 3
Laboratory Case #J07-005345　　　　　　-2-　　　　　　　　　　　　July 3, 2007

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 29A | Swab from the driver's door at the defect |
| 30A | Portion of swab from the driver's seat at the seat belt latch (blood indicated) |
| 31A1 | Portion of swab from the center console (Q1) of the vehicle (blood indicated) |
| 31B | Swab from the center console (Q2) from the vehicle (blood indicated) |

The following evidence was submitted to the Joliet Forensic Science Laboratory by Sgt. Pat Collins on June 22, 2007:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 34A | Stain (Q1) from the tan shorts from Kimberly Vaughn (blood indicated) |
| 34B | Portion of stain (Q2) from the tan shorts from Kimberly Vaughn (blood indicated) |

The following evidence was submitted to the Joliet Forensic Science Laboratory by Pat Collins on June 22, 2007:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 39A | Stain (Q1) from the plaid shirt from Kimberly Vaughn (blood indicated) |
| 39B | Stain (Q2) from the plaid shirt from Kimberly Vaughn (blood indicated) |
| 39C | Stain (Q3) from the plaid shirt from Kimberly Vaughn (blood indicated) |

## RESULTS

DNA from Exhibits 1A1, 6A1, 6B1, 7A, 10A, 11A, 12A, 13A, 14A, 20B1, 21A, 21B, 21C, 21G1, 21H1, 22A, 26A, 27A, 28A, 29A, 30A, 31A1, 31B, 34A, 34B, 39A, 39B and 39C was amplified using the Polymerase Chain Reaction (PCR) and profiled at the following loci: D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818, D13S317, D7S820, D16S539, TH01, TPOX, CSF1PO and Amelogenin.

A human female DNA profile was identified in Exhibits 1A1, 21A, 26A, 31B, 34A and 34B which matches the DNA profile of Kimberly Vaughn. This profile would be expected to occur in approximately 1 in 6.5 quadrillion Black, 1 in 820 trillion Hispanic, or 1 in 980 trillion White unrelated individuals.

A human male DNA profile was identified in Exhibits 6A1, 6B1, 7A, 10A, 11A, 12A, 13A, 20B1, 21B, 21C, 21G1, 21H1, 27A, 28A, 29A, 30A, 31A1, 39A, 39B and 39C which matches the DNA profile of Christopher Vaughn. This profile would be expected to occur in approximately 1 in 170 quadrillion Black, 1 in 940 quadrillion Hispanic, or 1 in 2.6 quintillion White unrelated individuals.

The DNA profiles identified in Exhibits 14A and 22A have been included in the DNA Index.

See the attached table for a summary of observed alleles.

## REQUESTS

For results of previous biological examinations, please refer to my prior laboratory report and to the laboratory report issued by Tanis L. Wildhaber Pfoser from the Joliet Forensic Science Laboratory.

DRAFT

12 *uu*

ISP DOO ZONE 3
Laboratory Case #J07-005345                                    -3-

July 3, 2007

**REQUESTS** (continued)
If you have any questions regarding this report, please feel free to contact me.

**EVIDENCE DISPOSITION**
Please note that Exhibits 1A1, 6A1, 6B1, 10A, 29A, 31B, 34A, 39A, 39B and 39C have been consumed in analysis. Extracted DNA remains for further testing.

The DNA evidence will be maintained in our evidence vault and may be picked up at your earliest convenience.

The above results relate only to the items tested.

Respectfully submitted,

DRAFT

Kelly J. Krajnik
Forensic Scientist

Attachment (s)

cc:  CRIME SCENE INVESTIGATOR ROBERT W. DEEL
     ASA John Conner- WILL COUNTY STATE'S ATTORNEY

13

# Exhibit C

## ILLINOIS STATE POLICE
Division of Forensic Services
Joliet Forensic Science Laboratory
515 East Woodruff Road
Joliet, Illinois 60432-1260
(815) 740-3543 (Voice) * 1-(800) 255-3323 (TDD)

Rod R. Blagojevich
*Governor*

July 26, 2007
**LABORATORY REPORT**

Larry G. Trent
*Director*

SA GARY LAWSON
ISP DOO ZONE 3
16648 SOUTH BROADWAY
LOCKPORT IL 60441

Laboratory Case #J07-005345
CSSC Case #3599-07-1038-9-1
Agency Case #07-14749LP

OFFENSE:  Death Investigation
SUSPECT:  Christopher Vaughn
VICTIMS:  Abigayle Vaughn/Cassandra Vaughn/Blake Vaughn/Kimberly Vaughn

The following evidence was submitted to the Joliet Forensic Science Laboratory by R. Deel on June 18, 2007:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1A1 | Swab from the outside of the gun barrel (blood indicated) |
| 6A1 | Substance collected from the bullet |
| 6B1 | Swab from the bullet |
| 7A | Portion of swabs from the driver's seat (blood indicated) |
| 10A | Swab from the seat belt (blood indicated) |
| 11A | Portion of swabs from the center console (blood indicated) |
| 12A | Portion of swabs from the passenger side of the center console (blood indicated) |
| 13A | Portion of swabs from the passenger seat (blood indicated) |
| 14A | Portion of blood standard: Kimberly Vaughn |
| 20B1 | Portion of swab from (the top right rear) pants of Christopher Vaughn (blood indicated) |
| 21A | Portion of swab from the lower right back of the jacket (blood indicated) |
| 21B | Portion of swab from the lower left back of the jacket (blood indicated) |
| 21C | Portion of swab from the back of the left arm area from the jacket (blood indicated) |
| 21G1 | Portion of swab from the bottom right sleeve cuff (blood indicated) |
| 21H1 | Portion of swab from below the left zipper pocket (blood indicated) |
| 22A | Portion of buccal standard: Christopher Vaughn |

The following evidence was submitted to the Joliet Forensic Science Laboratory by R. Deel on June 22, 2007:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 26A | Portion of swab from the driver's seat back, right side (blood indicated) |
| 27A | Portion of swab from the center console at the driver's side cup holder (blood indicated) |
| 28A | Portion of swab from the front passenger seat, left front (blood indicated) |

ISP DOO ZONE 3
Laboratory Case #J07-005345                    -2-

July 26, 2007

**EXHIBIT**     **DESCRIPTION**
29A     Swab from the driver's door at the defect
30A     Portion of swab from the driver's seat at the seat belt latch (blood indicated)
31A1     Portion of swab from the center console (Q1) of the vehicle (blood indicated)
31B     Swab from the center console (Q2) from the vehicle (blood indicated)

The following evidence was submitted to the Joliet Forensic Science Laboratory by Sgt. Pat Collins on June 22, 2007:

**EXHIBIT**     **DESCRIPTION**
34A     Stain (Q1) from the tan shorts from Kimberly Vaughn (blood indicated)
34B     Portion of stain (Q2) from the tan shorts from Kimberly Vaughn (blood indicated)

The following evidence was submitted to the Joliet Forensic Science Laboratory by Pat Collins on June 22, 2007:

**EXHIBIT**     **DESCRIPTION**
39A     Stain (Q1) from the plaid shirt from Kimberly Vaughn (blood indicated)
39B     Stain (Q2) from the plaid shirt from Kimberly Vaughn (blood indicated)
39C     Stain (Q3) from the plaid shirt from Kimberly Vaughn (blood indicated)

**RESULTS**
DNA from Exhibits 1A1, 6A1, 6B1, 7A, 10A, 11A, 12A, 13A, 14A, 20B1, 21A, 21B, 21C, 21G1, 21H1, 22A, 26A, 27A, 28A, 29A, 30A, 31A1, 31B, 34A, 34B, 39A, 39B and 39C was amplified using the Polymerase Chain Reaction (PCR) and profiled at the following loci: D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818, D13S317, D7S820, D16S539, TH01, TPOX, CSF1PO and Amelogenin.

A human female DNA profile was identified in Exhibits 1A1, 21A, 26A, 31B, 34A and 34B which matches the DNA profile of Kimberly Vaughn. This profile would be expected to occur in approximately 1 in 6.5 quadrillion Black, 1 in 820 trillion Hispanic, or 1 in 980 trillion White unrelated individuals.

A human male DNA profile was identified in Exhibits 6A1, 6B1, 7A, 10A, 11A, 12A, 13A, 20B1, 21B, 21C, 21G1, 21H1, 27A, 28A, 29A, 30A, 31A1, 39A, 39B and 39C which matches the DNA profile of Christopher Vaughn. This profile would be expected to occur in approximately 1 in 170 quadrillion Black, 1 in 940 quadrillion Hispanic, or 1 in 2.6 quintillion White unrelated individuals.

The DNA profile identified in Exhibit 22A has been included in the DNA Index.

See the attached table for a summary of observed alleles.

**REQUESTS**
For results of previous biological examinations, please refer to my prior laboratory report and to the laboratory report issued by Tanis L. Wildhaber Pfoser from the Joliet Forensic Science Laboratory.

ISP DOO ZONE 3
Laboratory Case #J07-005345                        -3-                                July 26, 2007

**REQUESTS** (continued)
If you have any questions regarding this report, please feel free to contact me.

**EVIDENCE DISPOSITION**
Please note that Exhibits 1A1, 6A1, 6B1, 10A, 29A, 31B, 34A, 39A, 39B and 39C have been consumed in analysis. Extracted DNA remains for further testing.

The DNA evidence will be maintained in our evidence vault and may be picked up at your earliest convenience.

The above results relate only to the items tested.

Respectfully submitted,

Kelly J. Krajnik
Forensic Scientist

Attachment (s)

cc:  CRIME SCENE INVESTIGATOR ROBERT W. DEEL
     ASA John Conner-WILL COUNTY STATE'S ATTORNEY