IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PIERRE VAUGHN and GAIL VAUGHN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 22-cv-4133 |
| v. ) | |
| ) | Judge Manish Shah |
| STATE OF ILLINOIS, COUNTY OF WILL, ) | |
| JAMES W. GLASGOW, JOHN R. CONNOR, ) | |
| KELLY J. KRAJNIK and GARY LAWSON, ) | |
| ) | |
| Defendants. ) | |

## THE COUNTY DEFENDANTS' MOTION TO DISMISS

Defendants County of Will, James Glasgow and John Connor (the "County Defendants"), by their undersigned attorneys, and pursuant to Fed.R.Civ.P. 12(b)(1) and (6), respectfully move this Court to dismiss them from this action with prejudice, stating as follows:

### Introduction

Plaintiffs' son is incarcerated in an Illinois prison as a result of his murder conviction in 2012. Plaintiffs allege that the time and expense of traveling to visit their son in prison violates their due process rights because the murder conviction was preceded by an unfair grand jury indictment. The indictment was allegedly unfair because it was based on testimony which misrepresented the evidence from the crime scene. The way to remedy this – according to Plaintiffs – is to change the contents of two state police lab reports that were prepared during the criminal investigation.

This Court lacks jurisdiction because Plaintiffs do not have standing to challenge the fairness of the grand jury proceedings that led to their son's indictment. Plaintiffs also lack standing because their claim does not present an actual controversy since the allegedly unfair grand jury indictment has been superseded by finding of guilt beyond a reasonable doubt after a

full trial. In addition, Plaintiffs lack standing to sue the County Defendants for the requested injunctive relief because none of them can change the contents of the state police lab reports. Moreover, even if Plaintiffs had standing, their due process claim still fails because they have no constitutionally protected interest with respect to visiting their son in prison. None of these defects can be remedied by a new pleading, and therefore this action should be dismissed with prejudice.

## Factual Background

In 2012, Plaintiffs' son, Christopher Vaughn, was convicted of murdering his wife, Kimberly, and their three children in the family car. *People v. Vaughn*, 2015 IL App (3d) 120996-U at ¶¶ 7, 10 and 44, attached as Exhibit 1. Christopher was sentenced pursuant to that conviction, *see People v. Vaughn*, at ¶ 2, and is currently incarcerated at Pinckneyville Correctional Center in Illinois. (Complaint, ¶65). Plaintiffs live in Missouri and incur lost time and income when they drive approximately six hours each way to Pinckneyville to visit Christopher at the prison. (*Id.*, ¶¶ 3 and 65).

Five years before Christopher was convicted, a grand jury returned an indictment against him. (Complaint, ¶ 32). During the pre-indictment investigation, Kelly Krajnik, a forensic scientist from the Joliet Forensic Science Laboratory, analyzed parts of the car containing blood stains, including the passenger side seatbelt. (*Id.*, ¶¶ 21-22, and Complaint Exhibit B). Krajnik communicated her test results to state police officer Gary Lawson, state's attorney James Glasgow and assistant state's attorney John Connor. (Complaint, ¶¶ 23-24). Krajnik then prepared a draft report dated July 3, 2007, which indicated that a blood stain on the seatbelt matched Christopher's DNA profile, and sent the draft report to Lawson and Connor. (*Id.*, ¶¶ 25-28 and Complaint Exhibit B).

Roughly three weeks after Krajnik's draft report, Lawson testified before the grand jury. (*Id.*, ¶ 31). Neither Glasgow nor Connor was present at the grand jury hearing. (Cover page from Report of Proceedings on 7/25/2007 attached as Exhibit 1). Lawson allegedly testified that lab testing indicated Kimberly's blood was found on the seatbelt, even though the tests indicated that the blood stain chosen for testing only matched Christopher's DNA profile. (*Id.*, ¶¶ 27 and 31). That testimony allegedly led the grand jury to believe that Kimberly was wearing her seatbelt when she was shot. (*Id.*, ¶ 37). The day after the grand jury hearing, Krajnik finalized her report. (*Id.*, ¶ 33, and Complaint Exhibit C). The final report was the same as the draft report with respect to the seatbelt blood stain that she had tested, but no longer listed Kimberly in the "suspect" field. (*Id.*, ¶ 36, and Complaint Exhibit C).

In 2009, Christopher's criminal defense team interviewed Krajnik. (4/28/2009 Memo. of Interview of Kelly Krajnik, attached as Exhibit 3). She was not asked why her report dated July 3, 2009 was marked "draft," but was asked about a document entitled DNA Cover Sheet, which summarized a telephone call that she made to ASA Connor on July 24, 2007. (*Id.*, pp. 1-2; 7/24/2007 DNA Cover Sheet attached as Exhibit 4). Krajnik explained that she called ASA Connor because the detectives had reclassified Kimberly from being a suspect to a victim, and Krajnik wanted to know if Kimberly's DNA standard should continue to be stored in the CODIS database, which is used to store DNA standards of suspects. (Ex. 3, p. 2). ASA Connor responded that Kimberly's DNA standard should be removed from CODIS now that she was no longer a suspect. (Ex. 3, pp. 1-2; Ex. 4).

During the 2009 interview, Krajnik was also asked about the tests that she conducted on the seatbelt. (Ex. 3, p. 2). She explained that she chose not to test every blood stain along the length of the seat belt. (*Id.*). She stated she avoided the most heavily saturated sections of the seatbelt when obtaining the specimen which matched Christopher's DNA profile. (*Id.*). She

3

stated that specimen was taken from an area that was stained without having been soaked through. (*Id.*).

In 2012, Christopher appealed his conviction, and the state appellate court affirmed the conviction in 2015. *People v. Vaughn*, at ¶¶ 83-84.

**Standards for Disposition**

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the court, while a motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). Subject matter jurisdiction is lacking unless the plaintiff establishes standing because standing is an essential component of Article III's case-or-controversy requirement. *Apex Digital, Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When deciding a Rule 12(b)(1) motion, a district court considers not only the allegations of the complaint, but also any evidence submitted to determine whether in fact subject matter jurisdiction exists. *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017).

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In making this determination, a court may consider the "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Factual allegations are accepted as true at the pleading stage, but "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

## ARGUMENT

### I. Plaintiffs lack standing to challenge the fairness of the grand jury proceedings concerning their son Christopher.

Plaintiffs allege they were entitled to see their son, Christopher, receive fair and impartial grand jury proceedings. (Complaint, ¶ 57). This allegation is contrary to well settled law. The Supreme Court recognized long ago that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Nearly 50 years later, that principle remains well settled. *See Stingley v. Chisholm*, 805 Fed.Appx. 436, 437 (7th Cir. 2020).

The holdings in *Linda R.S.* and *Stingley* are rooted in the standing doctrine, which prohibits plaintiffs from suing to enforce the rights of third parties. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (plaintiffs generally must assert their own legal rights and interests, and cannot rest claims to relief on the legal rights or interests of third parties); *see also*, *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 17-18 (2004) (litigants cannot sue in federal court to enforce the rights of third parties), *abrogated on other grounds by Lexmark Intern, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-28 (2014).

5

Here, Plaintiffs are attempting to enforce the alleged rights of a third party, specifically their son Christopher's alleged rights. Indeed, the only relief that Plaintiffs seek in this action is to change the contents of two lab reports from the criminal investigation of Christopher. Neither of Plaintiffs was the subject of those reports, and neither of them was even mentioned in those reports. Plaintiffs were not co-defendants with Christopher in the criminal case against him, nor were Plaintiffs ever threatened with criminal prosecution. Accordingly, to the extent there is any legal right or interest in having the lab reports from the criminal investigation changed as requested, that right or interest is held by Christopher, not by Plaintiffs.

Plaintiffs' due process claim is based on an alleged entitlement to a fair grand jury hearing, but the only holder of that alleged entitlement is Christopher, who is not a party in this action. Even assuming for purposes of this motion that Christopher was harmed by unfair grand jury proceedings, Plaintiffs lack standing to challenge that alleged unfairness on behalf of Christopher or to use the alleged injury to him as the basis for their due process claim. As a result, this Court lacks subject matter jurisdiction over Plaintiffs' claim, and therefore this action should be dismissed for lack of subject matter jurisdiction.

### II. Plaintiffs lack standing because the alleged misconduct at the grand jury hearing does not present an actual controversy.

Plaintiffs also lack standing because Christopher's conviction after a full trial makes it impossible to redress the alleged misconduct at the grand jury hearing. To establish standing, a plaintiff must show that the requested relief will address the claimed injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, the gravamen of Plaintiffs' due process claim is that evidence about the blood on the seatbelt was misrepresented during the grand jury proceedings, leading the grand jury to mistakenly believe that probable cause existed for a criminal indictment against Christopher. The correctness of the grand jury indictment is not an actual controversy for

6

standing purposes because that indictment was later superseded by a full trial where a petit jury found Christopher guilty beyond a reasonable doubt.

In cases where the accused complains of wrongdoing during grand jury proceedings, the Supreme Court has held:

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that [the accused was] guilty as charged, but also that [the accused is] in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*United States v. Mechanik*, 475 U.S. 66, 70 (1986). The Court specifically concluded that alleged errors during grand jury proceedings are not assessed according to the evidence presented to the grand jury, but rather must be viewed in light of the evidence produced at trial. *Mechanik*, 475 U.S. at 71. Acknowledging that this may seem unfair to the accused, the Court explained:

> In courtroom proceedings as elsewhere, "the moving finger writes; and, having writ, moves on." Thus, reversal of a conviction after a trial free from reversible error cannot restore to the defendant whatever benefit might have accrued to him from a trial on an indictment returned [without error].

*Id.*; *see also*, *United States v. Morrison*, 834 Fed.Appx. 279, 280 (7th Cir. 2021) (citing *Mechanik* to confirm that after a guilty verdict at trial, any challenge to underlying indictment based on alleged misrepresentation of records at grand jury hearing would be frivolous).

Here, Christopher's conviction after a full trial precludes any actual controversy regarding the grand jury proceedings. Even assuming that Lawson testified falsely before the grand jury about the seatbelt evidence (which he did not), the only decision allegedly influenced by that testimony was the grand jury's decision. When the case was tried five years later, a petit jury found Christopher guilty beyond a reasonable doubt and the allegedly false testimony at the grand jury hearing played no role in the guilty verdict. As a result, any alleged unfairness of

7

Christopher's grand jury hearing is not redressable given his subsequent criminal conviction. Thus, Plaintiffs lack standing and this action should be dismissed for lack of subject matter jurisdiction.

### III. Plaintiffs lack standing because none of the County Defendants is able to provide the requested relief.

Plaintiffs' prayer for relief asks this Court to enjoin all Defendants to: (a) remove the "draft" label from Krajnik's report dated July 3, 2007; and (b) add Kimberly Vaughn to the suspect field on Krajnik's report dated July 26, 2007.  (Complaint, Prayer for Relief).  Plaintiffs lack standing to bring their claim against the County Defendants because none of the County Defendants is able to provide the requested relief.

Under the redressability factor of the standing doctrine, a plaintiff seeking an injunction must demonstrate that the defendant to be enjoined has the authority to effectuate the requested relief. *Swan v. Bd. of Education of City of Chicago*, 956 F.Supp.2d 913, 918 (N.D.Ill. 2013), *citing Turner v. McGee*, 681 F.3d 1215, 1218-19 (10th Cir. 2012).  If a defendant does not authority to carry out the requested injunctive relief, that defendant must be dismissed because a court cannot enjoin a defendant to act in a way that is beyond the defendant's authority in the first place. *Swan*, 956 F.Supp.2d at 918 (collecting cases).

Here, Plaintiffs seek to enjoin the County Defendants to change the contents of two state police lab reports that were created during the criminal investigation of Christopher.  None of the County Defendants has authority to change the contents of police reports created by a different law enforcement agency.  None of the County Defendants is alleged to have authored the lab reports, and the Will County State's Attorney's Office (SAO) does not possess the originals of those reports.  The SAO only received copies of those reports from the state police.  Thus, even if this Court were to grant the requested injunctive relief, the County Defendants would lack the

8

power and ability to carry out the injunction. Accordingly, Plaintiffs lack standing to seek the requested injunctive relief against the County Defendants, and therefore each of them should be dismissed.

> IV. **The due process claim is legally insufficient because Plaintiffs have no constitutionally protected interest to be free from having to visit their son at the location where he is incarcerated.**

A threshold inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty. *General Auto Service Station v. City of Chicago*, 526 F.3d 991, 1002 (7th Cir. 2008), *citing American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Here, Plaintiffs allege they have a protected property interest in their finances, and a protected liberty interest in their time and freedom of travel. (Complaint, ¶¶ 55-56). However, none of these alleged interests is constitutionally protected in the context of Plaintiffs' visits to their son in prison.

The usual liberty interest in associating with family members does not exist when the family member is incarcerated. *Mayo v. Lane*, 867 F.2d 374 (7th Cir. 1989). In *Mayo*, the Seventh Circuit expressly recognized that "[p]rison necessarily disrupts the normal pattern of familial association, so lawful imprisonment can hardly be thought [to cause] a deprivation of the *right* of relatives to associate with the imprisoned criminal." 867 F.2d at 375 (italics in original). In addition, the Court noted that the prisoner himself is the person with the primary stake in any alleged deprivations caused by the imprisonment, and therefore any complaint about those deprivations should be expected to come from the prisoner himself and not any relatives. *Id*., at 376. Specifically, the Court held that unless the relative could allege that her visits to the prison were prevented or interfered with, the relative lacked standing to assert a constitutional right concerning those visits. *Id*., at 376.

9

Ten years after *Mayo*, the Seventh Circuit reaffirmed that holding in *Froelich v. State Dept. of Corrections*, 196 F.3d 800 (7th Cir. 1999). In *Froelich*, two children claimed their mother was incarcerated at a location which deprived them of having a relationship or any meaningful contact with her. The Seventh Circuit rejected the claim, finding that "[t]he separation of family members that ensues upon the lawful incarceration of one of them is not the destruction of the family, but merely an inevitable incident of incarceration." 196 F.3d at 802. Noting that nearly all prisoners have families, the Court concluded there is no right to have a close family member incarcerated at a particular location for visitation purposes. *Id.*

Here, Plaintiffs are in the exact same position as the plaintiffs in *Mayo* and *Froelich*. Plaintiffs are relatives of an incarcerated person, alleging a protected interest to be free from having to travel several hours and incur the related expense thereof, in order to visit their son. (Complaint, ¶¶ 54-55 and 65). The Seventh Circuit has already considered whether such a protected interest exists, and squarely concluded that it does not. *Mayo*, 867 F.2d at 376; *Froelich*, 196 F.3d at 802. Thus, Plaintiffs' allegations fail to satisfy the threshold requirement of identifying a constitutionally protected interest. As a result, their due process claim is not actionable and should be dismissed.

> **V. Plaintiffs cannot seek injunctive relief for lost travel time and expenses because there is an adequate legal remedy for that type of alleged harm.**

A plaintiff seeking a permanent injunction must demonstrate that remedies available at law, such as monetary damages, are inadequate to compensate for the claimed injury. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, the sole loss alleged in the Complaint is the travel time and expense that Plaintiffs incur when visiting Christopher at his place of incarceration. Plaintiffs make no allegation that their travel time and expenses are

irreparable in nature, nor do they allege that they lack an adequate remedy at law for that alleged harm.

The absence of such allegations is not surprising because lost travel time and expenses are the types of harm that is easily quantifiable and compensated through money damages. *See DM Trans, LLC v. Scott*, 38 F.4th. 608, 619-20 (7th Cir. 2022) (adequate remedy at law exists where alleged losses can be reasonably estimated and calculated). Thus, even presuming Plaintiffs' claim is otherwise actionable, they have an adequate remedy at law for their claimed injury and cannot seek injunctive relief. Accordingly, Plaintiffs' claim is not actionable and should be dismissed.

**VI. The County of Will is misjoined as a defendant.**

The Complaint does not indicate why the County of Will is included as a defendant, but merely indicates that the County of Will is a county in Illinois. (*See* Complaint, ¶ 5). It appears that Plaintiffs name the County as a defendant because the state's attorney and an assistant state's attorney from Will County are defendants. That reason is incorrect because state's attorneys and assistant state's attorneys are state officials, not county officials. *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995). Accordingly, there is no basis for the County to be included as a defendant in this matter, and the County should be dismissed.

**VII. The County Defendants adopt and incorporate the arguments set forth in the State Defendants' motion to dismiss.**

In the event this Court exercises jurisdiction over this action, the County Defendants adopt and incorporate by reference the arguments set forth in the motion to dismiss filed by the State Defendants (State of Illinois, Kelly Krajnik and Gary Lawson).

11

WHEREFORE, for the foregoing reasons, the County Defendants respectfully request that this Court grant this motion and dismiss them from this lawsuit with prejudice, and grant them such further and additional relief as this Court deems just and proper.

>Respectfully submitted,
>
>COUNTY OF WILL, JAMES W. GLASGOW
>and JOHN R. CONNOR
>
>s/ Martin W. McManaman
>One of their attorneys

Martin W. McManaman
L&G Law Group LLP
175 West Jackson Blvd.
Suite 950
Chicago, IL 60604
(312) 364-2500
mmcmanaman@lgcounsel.com