**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **PIERRE VAUGHN and GAIL VAUGHN,** ) | |
| ) | **Case No. 22-cv-4133** |
| **Plaintiffs,** ) | |
| ) | **Judge Manish S. Shah** |
| v. ) | **Magistrate Judge Beth W. Jantz** |
| ) | |
| **STATE OF ILLINOIS,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**STATE DEFENDANTS'
MEMORANDUM IN SUPPORT OF THEIR
<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 2

I. PLAINTIFFS LACK STANDING TO BRING SUIT. ................................................. 3

   A. Plaintiffs, As Third Parties, Do Not Have a Protected Interest in Christopher's Prosecution. ................................................................................................................. 4

   B. Plaintiffs Do Not Have a Constitutionally-Protected Right to Visit Christopher In Prison. ......................................................................................................................... 5

II. PLAINTIFFS FAIL TO STATE A CLAIM. ............................................................... 6

   A. "Correction" of the ISP Laboratory Reports Does Not Redress Plaintiffs' Claimed Injury. ............................................................................................................. 6

   B. This Court Has No Jurisdiction to "Correct" Records from a State Court Prosecution. ................................................................................................................. 7

   C. Federalism, Comity, and Abstention Principles Militate against a Federal Court Granting Injunctive Relief That Interferes with State Court Records. ............................... 9

III. PLAINTIFFS' CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS, THE ELEVENTH AMENDMENT, AND ABSOLUTE AND QUALIFIED IMMUNITIES. ....... 11

   A. The Statute of Limitations Bars Plaintiffs' Claim. ................................................... 11

   B. Plaintiffs Cannot Bring a Section 1983 Suit Against the State of Illinois. ............... 11

   C. Plaintiff's Claim Against the State Is Barred by the Eleventh Amendment. .......... 12

   D. The Claim Against Defendant Lawson Is Barred by Testimonial Immunity ......... 12

   E. Defendant Krajnik Is Protected by Absolute Immunity and/or Qualified Immunity. .................................................................................................................... 12

## INTRODUCTION

On August 8, 2022, Plaintiffs Pierre Vaughn and Gail Vaughn, the parents of convicted murderer Christopher Vaughn[1] ("Christopher"), filed their Complaint against the State of Illinois, County of Will, Will County State's Attorneys James W. Glasgow and John R. Conner, Illinois State Police Master Sergeant Gary Lawson, and Illinois State Police Forensic Scientist Kelly J. Krajnik. ECF No. 1. The Complaint challenges Christopher's conviction for the 2007 murder of his wife and three children, calling into question the grand jury testimony given by Defendant Lawson during Christopher's state court prosecution, and seeking as injunctive relief that this Court "correct" two Illinois State Police forensic laboratory reports prepared by Defendant Krajnik. ECF No. 1 at ¶¶ 21-37, 45, Prayer for Relief. Plaintiffs, Christopher's parents, bring one Section 1983 claim, alleging that they have protected liberty and property interests that were violated when they traveled six hours to visit their son Christopher in prison in Illinois. ECF No. 1 at ¶65. This lawsuit is a creative, albeit misguided, end-run on the state and federal post-conviction hurdles Christopher would face were he to bring suit on his own behalf.

Plaintiffs' complaint should be dismissed for a number of reasons. First, Plaintiffs lack standing to bring any claim on behalf of their son Christopher. Nor do Plaintiffs possess any cognizable interests in the prosecution or non-prosecution of a third party. Second, Plaintiffs have failed to state a claim for which relief can be granted because federal courts do not have the authority to order a state court or prosecution to modify records or evidence from a criminal case. Third, assuming *arguendo* that Plaintiffs had standing or a cognizable claim, which they do not, their claims fail for multiple additional reasons. Specifically, all claims are barred by the statute of limitations, the claim against the State of Illinois is barred by the Eleventh Amendment, the claim

---

[1] *People v. Vaughn*, 2015 IL App (3d) 120996-U, attached hereto as **Exhibit A**.

1

against Defendant Lawson is barred by absolute testimonial immunity, and the claim against Defendant Krajnik is barred by qualified immunity.[2]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) authorizes the Court to dismiss any claim for which the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) also is the appropriate vehicle to adjudicate challenges to standing, which is a "jurisdictional requirement." *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). In determining subject matter jurisdiction, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (quotation marks omitted). If a defendant factually challenges the basis for federal jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex*, 572 F.3d at 444. "In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012). Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ.P. 12(h)(3).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. A complaint may be dismissed if the plaintiff fails to allege sufficient facts to state a cause of action that is

---

[2] The State Defendants adopt and incorporate the arguments set forth in the County Defendants' motion to dismiss. In the event this Court exercises jurisdiction over this action, the State Defendants adopt and incorporate by reference the arguments set forth in the motion to dismiss filed by the County Defendants (Will County, James W. Glasgow, and John Conner).

plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A sufficient complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and be supported by factual content, as "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, but it must also "draw on its judicial experience and common sense" to determine if the plaintiff has stated a plausible claim for relief. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal,* 556 U.S. at 678. If, upon its review, the court determines that a plaintiff has failed to meet this plausibility requirement, the matter should be dismissed.

## ARGUMENT

**I.  PLAINTIFFS LACK STANDING TO BRING SUIT.**

Plaintiffs do not have Article III standing. "The requirement that a [plaintiff] 'have standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis v. FEC*, 554 U.S. 724, 733 (2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff seeking relief must show that he has suffered or is threatened with an actual injury. An injury is an invasion of a legally protected interest that must be both concrete and particularized and "actual or imminent," not merely "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990). The plaintiff's injury also must remain "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. And it must be "likely," not merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 560-61.

3

### A. Plaintiffs, As Third Parties, Do Not Have a Protected Interest in Christopher's Prosecution.

Plaintiffs claim to have a right to "valid and verified DNA results to be brought before the Grand Jury" and "to sworn testimony to be a truthful representation of the findings." *Id.* at ¶¶58-59. However, it has been settled for nearly 50 years that a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another. *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973). In *Stingley v. Chisholm*, 805 Fed. Appx. 436 (7th Cir. 2020), the Seventh Circuit affirmed the dismissal of Stingley's Section 1983 suit that alleged prosecutors unlawfully failed to investigate and charge those responsible for his son's murder, citing *Linda R.S.* It follows logically that where Plaintiffs would not have a legally cognizable interest in having Christopher or someone else prosecuted for the murders of Christopher's wife and children, that Plaintiffs would therefore not have an interest in having Christopher or anyone else prosecuted in a certain way, with certain evidence.

Further, it is a basic principle that parties in litigation do not, as a general rule, have the right to assert the rights of third parties who are not before the Court. *Massey v. Helman*, 196 F. 3d 727, 739 (7th Cir.1999) To determine whether a plaintiff has standing to raise the constitutional rights of others, two questions should be asked: (1) "has the litigant suffered some injury in fact sufficient to create a case or controversy in the Article II sense?" and (2) "as a prudential matter, is the plaintiff the proper proponent of the particular legal rights he is asserting?" *Id.* The answer to both questions in this case is no. Christopher, not his parents, is the proper party to challenge any purported irregularities with his prosecution. In addition, as discussed below, Plaintiffs have not identified a redressable injury. Without more, Plaintiffs lack standing and their suit should be dismissed on that basis alone. *Warth v. Seldin*, 422 U.S. 490, 518 (1975) ("It is the responsibility

4

of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.")

    **B.  Plaintiffs Do Not Have a Constitutionally-Protected Right to Visit Christopher In Prison.**

  Plaintiffs claim that they have a "constitutionally protected property interest in their finances," *id*. at ¶54, and a "constitutionally protected liberty interest in their time and freedom of travel." *Id.* at ¶55. Plaintiffs claim those interests were implicated when they traveled six hours from their home in Missouri to visit Christopher at Pinckneyville Correctional center. *Id.* at ¶57. However, the Seventh Circuit has repeatedly held that the constitutionally-protected right to travel, and the constitutionally-protected right to associate with one's relatives, do not extend to a right of family to associate with an incarcerated individual. *Arsberry v. Illinois*, 244 F.3d 558, 565 (7th Cir. 2001) ("It is inconceivable […] that the constitutional concept of liberty may encompass a limited right to make or receive prison visits involving family members."); *Froehlich v. Wisconsin Dep't of Corrections*, 196 F. 3d 800, 801-02 (7th Cir. 1999) (affirming dismissal of substantive due process suit by minor children of Wisconsin prisoner transferred to out-of-state prison); *Mayo v. Lane*, 867 F.2d 374, 375 (7th Cir. 1989) ("Prison necessarily disrupts the normal pattern of familial association, so lawful imprisonment can hardly be thought a deprivation of the *right* of relatives to associate with the imprisoned criminal.").

  Plaintiffs attempt to bolster their claim by combining their purported liberty and property interests with their claimed interest in their son's prosecution: "[g]iven that Plaintiffs' property and liberty interests were at stake, Plaintiffs were entitled to seeing a fair and impartial hearing regarding the actions in accordance with the professional rules of ethics and conduct attributed to Defendants' roles in the action." ECF No. 1 at ¶57. This allegation is problematic for two reasons: first, as already stated, Plaintiffs have no constitutionally protected interest in their son's

5

prosecution, *Linda R.S.* at 619, nor do they have a constitutionally protected interest in visiting Christopher in prison. *Arsberry,* 244 F.3d at 565. Second, the statement is logically deficient. The allegation in ¶57 suggests that Plaintiffs' purported property and liberty interests implicated in visiting their son in prison were somehow at play *before* he was convicted and incarcerated due to the alleged irregularities with grand jury testimony and forensic laboratory reports. Plaintiffs have not alleged that they were traveling to visit their son in prison at Pinckneyville before he was convicted. Therefore, it is unclear how Plaintiffs purported liberty and property interests were invaded without due process, or more importantly, how their son's conviction after a full trial and subsequent appeal affirming that conviction implicate their purported rights.

## II. PLAINTIFFS FAIL TO STATE A CLAIM.

Plaintiffs' claim for equitable relief fails for multiple reasons and should be dismissed. For at least three separate and independent reasons, Plaintiffs' request for this Court to "correct" state court records must be rejected. First, Plaintiffs' request is improper because the relief they seek is merely "symbolic" and would not redress their alleged injuries. Second, Plaintiffs' request is improper because a federal court cannot correct a state court record via a writ of mandamus disguised as injunctive relief. Third, Plaintiffs' request is improper because it ignores principles of federalism and comity.

### A. "Correction" of the ISP Laboratory Reports Does Not Redress Plaintiffs' Claimed Injury.

Plaintiffs' request is improper because the relief they seek is merely "symbolic" and would not redress their alleged injuries. *See, e.g.*, *Air Line Pilots Ass'n Int'l v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990) (relief must make a difference to the "legal interests" of the parties "as distinct from their psyches"); *Friends of Superior, Inc. v. City of Superior*, 2007 WL 5325716, at *2-3 (W.D. Wis. Feb. 23, 2007) (holding that plaintiff had no standing to pursue relief that fell into the

6

"psychic satisfaction category"). The requested correction of the Illinois State police forensic laboratory reports would not affect the liberty and property interests Plaintiffs claim are implicated here. Correction of those records, presumably, is the intended first step for Christopher to seek post-conviction relief from the state trial court outside of the time limitations set forth in the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.* (requiring post-conviction petitions to be filed no more than 6 months after conviction or appeal "…unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence). But the correction of those records, *per se*, do nothing to alter Christopher's conviction or incarceration. The liberty and property interests that Plaintiffs claim are violated when they travel six hours to visit Christopher at the Pinckneyville Correctional Center remain unchanged even if this Court were able to grant the relief Plaintiffs seek. ECF No. 1 at ¶57. As such, Plaintiffs have no standing to seek a correction of the state court records.

### B. This Court Has No Jurisdiction to "Correct" Records from a State Court Prosecution.

Plaintiffs' request is also improper because it ignores the limitations on this Court's jurisdiction. The State Defendants have found no caselaw permitting a federal court to directly correct records from a state court prosecution. Nor does this Court have jurisdiction to issue a writ of mandamus, which is essentially what Plaintiffs request, compelling a federal court to "correct" state court records. *See, e.g.*, *In re Campbell*, 264 F.3d 730, 731-32 (7th Cir. 2001); *Smith v. Supreme Court of Wisc.*, 1992 WL 97985, at *1 (7th Cir. May 11, 1992); *White v. Ward*, 145 F.3d 1139, 1140 (10th Cir. 1998); *Downing v. Arnold*, 461 F. Supp. 54, 57 (D.N.H. 1978) ("[T]he thrust of plaintiff's claim for relief here although termed in the legalese of injunction is in reality a request for this Court to order by way of mandamus the [requested relief].").

7

Federal writs of mandamus were abolished under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 81(b). Federal courts may grant mandamus under 28 U.S.C. § 1651 (All Writs Statute), as to other federal courts, *Haggard v. Tennessee*, 421 F.2d 1384, 1385 (6th Cir. 1970), but "federal courts lack 'jurisdiction to issue a mandamus against state officials for violating their duties under state law.'" *Banks v. Illinois*, 258 F. App'x 902, 902 (7th Cir. 2007); *Coniston Corp v. Hoffman Estates*, 844 F.2d 461, 469 (7th Cir. 1988); *In re Campbell*, 264 F.3d at 731-32.

Plaintiffs face three hurdles in obtaining a writ of mandamus from a federal court. First, it is settled "that a federal court has no general jurisdiction to issue writs of mandamus where that is the only relief sought. In the absence of special statutory authority it can issue writs of mandamus only as ancillary to and in aid of *jurisdiction otherwise vested in it*." *Haggard*, 421 F.2d at 1386 (citing *Hertz v. Record Publishing Co.*, 219 F.2d 397 (3d Cir.1955)) (emphasis added). The only relief Plaintiffs have requested is the correction of two Illinois State Police forensic laboratory reports. ECF No. 1, Prayer for Relief. Plaintiffs have not established any basis for this Court to exercise jurisdiction other than through their writ-of-mandamus-in-disguise, and therefore, standing alone, the writ of mandamus fails to confer jurisdiction on this Court.

Second, even if Plaintiff had requested additional relief and this Court had proper jurisdiction over those claims, thereby making their mandamus claim ancillary to those proper claims, Plaintiffs would be unable to establish that a federal court has the authority to order a state agency or state officials to act. Federal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties. *In re Campbell*, 264, F. 3d 730, 731 (2001) (collecting cases); *Haggard v. Tennessee*, 421 F. 2d 1384, 1385 (6th Cir. 1970*).*

Third, before resorting to a writ of mandamus through his third-party parents, Christopher would have to exhaust his administrative remedies. *Holmes v. United States Bd. of Parole*, 541 F. 2d 1243, 1247 (7th Cir. 1976) (overruled on other grounds). Again, Plaintiffs do not have standing to bring suit on behalf of Christopher. Christopher is the proper plaintiff for a writ of mandamus, and he would have to show that he had exhausted his administrative remedies. The Sixth Circuit explained that "[i]f we treat this action for mandamus as one for habeas corpus, we are met with the statutory condition that a person in custody pursuant to a judgment of a state court must first exhaust the remedies available to him in the courts of the state before resorting to the federal courts for relief." *Haggard,* 421 F. 3d at 1385. "Where state procedures are questioned constitutional rights may, but are not necessarily, involved in each claim. So it is here. A rose is still a rose. When properly vindicated by adequate and available state procedures, these procedures should not be bypassed because parties utter the magic numbers 42 U.S.C. § 1983." *Id.* (internal citations omitted).

      **C.**    **Federalism, Comity, and Abstention Principles Militate against a Federal Court Granting Injunctive Relief That Interferes with State Court Records.**

Third, Plaintiffs' request is improper because it ignores principles of federalism and comity. The Supreme Court has instructed that "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 377-80 (1976). It would be a profound assault on principles of federalism and comity for this Court to order the correction of state court records, especially in a way that directly contradicts a state court petit jury's unanimous verdict of guilt beyond a reasonable doubt and a state appellate court's affirmation of that conviction. *People v. Vaughn*, 2015 IL App (3d) 120996-U, attached hereto as Exhibit A. The relief that Plaintiffs request impugns the validity of Christopher's conviction. The *Heck* doctrine bars suit challenging a conviction – whether for

9

damages or injunctive relief – unless and until that conviction has been set aside. *Heck v. Humphrey,* 512 U.S. 477 (1994); *Johnson v. Rogers*, 944 F. 3d 966, 968 (7th Cir. 2019); *Shelly v. Jukovic*, 2021 U.S. Dist. LEXIS 85674 (D. Neb. 2021) (collecting cases from Eighth, Fourth, and Tenth Circuits that *Heck* applies regardless of the form of relief sought).

The Seventh Circuit has emphasized that federal courts should not interfere in the running of state courts. *See e.g*, *Courthouse News Service v. Brown*, 908 F.3d 1063, 1074 (7th Cir. 2018) (the principle of comity takes on special force when federal courts are asked to decide how state courts should conduct their business). Further, several doctrines rooted in federalism and comity exist to prevent just such interference. The *Rooker-Feldman* doctrine, for instance, prohibits state court losers from using the federal courts as an appellate court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Exxon Mobil Corp v. Saudi Basic Indus. Corp* 544 U.S 280, 284 (2005). The *Rooker*-Feldman doctrine is not a perfect fit here, because Plaintiffs were not the losers of the state court prosecution, their son, Christopher was. The *Younger* abstention doctrine is also not an exact fit, *Younger v. Harris*, 401 U.S. 37 (1971), because there are no pending state court proceedings. Lastly, the *Heck* doctrine, discussed *supra*, bars suit that challenges the validity of a conviction when that conviction has not yet been set aside. *Heck v. Humphrey,* 512 U.S. 477 (1994). The *Heck* doctrine typically applies when it is the prisoner who brings the claim, and so again, the fit is not exact when it is third-party challenge to the conviction. Nonetheless, principles of comity, equity, and federalism suggest that it is proper for this Court to abstain from exercising jurisdiction over Plaintiffs' claim. *J.B. v. Woodard*, 997 F.3d 714, 724 (7th Cir. 2021) (abstaining from exercising jurisdiction even when *Younger*, *Rooker-Feldman*, and domestic relations abstention doctrines were not a perfect fit); *Courthouse News Service,* 908 F. 3d at 1071.

10

### III. PLAINTIFFS' CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS, THE ELEVENTH AMENDMENT, AND ABSOLUTE AND QUALIFIED IMMUNITIES.

Finally, if the Court finds it appropriate to reach the merits of Plaintiffs' claim, the statute of limitations, the Eleventh Amendment, testimonial immunity, and absolute and/or qualified immunity require dismissal of Plaintiffs' claim.

#### A. The Statute of Limitations Bars Plaintiffs' Claim.

Causes of action under 42 U.S.C. § 1983 are subject to a two-year statute of limitations. The Seventh Circuit has consistently held that the limitations period applicable to § 1983 actions brought in Illinois is the two-year period for general personal injury actions set forth in 735 ILCS 5/13-202. *Woods v. Illinois Department of Children & Family Services*, 710 F.3d 762, 766 (7th Cir. 2013).

Plaintiffs' Complaint contains one count alleging a violation of Section 1983. Plaintiffs challenge the grand jury testimony given by Defendant Lawson in July 2007 and forensic DNA reports prepared in July 2007. ECF No. 1 at ¶¶25-33. Christopher was tried and convicted in August 2012. *People v. Vaughn*, 2015 IL App 3d 120996-U at *P7, attached hereto as Exhibit A. An appeal unsuccessfully challenging Christopher's conviction was decided in September 2015. *Id.* Christopher was in custody after his conviction in July 2012, but even if the September 15, 2015 date of the appellate decision is used, the two-year statute of limitations to bring Section 1983 claims is long past.

#### B. Plaintiffs Cannot Bring a Section 1983 Suit Against the State of Illinois.

Plaintiffs bring a claim for relief under 42 U.S.C. § 1983 and seek injunctive relief against the State. *See generally* ECF No. 1, and Prayer for Relief. Section 1983 authorizes suit only against a "person" who acts under color of state law and deprives another person of his or her rights. *See* 42 U.S.C. § 1983. But the State is not a "person" subject to suit under Section 1983. *Arizonans for*

11

*Official English v. Arizona*, 520 U.S. 43, 49 n.24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because Plaintiffs seek injunctive relief against the State of Illinois, their claim against the State should be dismissed with prejudice. *See Will*, 491 U.S. at 71.

    **C.**    **Plaintiff's Claim Against the State Is Barred by the Eleventh Amendment.**

In addition, the Eleventh Amendment precludes Plaintiffs' claim against the State. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as a defendant is proscribed by the Eleventh Amendment."); *Kroll v. Board of Trustees of University of Illinois*, 934 F.2d 904, 906-907 (7th Cir. 1991). Here, Plaintiffs do not make any specific allegations about the State except as the employer of Defendants Glasgow, Conner, Lawson and Krajnik. *See generally* ECF No. 1. Accordingly, Plaintiff's claim against the State is barred by the Eleventh Amendment.

    **D.**    **The Claim Against Defendant Lawson Is Barred by Testimonial Immunity.**

Defendant Lawson is sued for his grand jury testimony in Christopher's murder prosecution. ECF No. 1 at ¶¶30-32. Defendant Lawson is absolutely immune from claims related to his testimony before the grand jury. *Rehberg v. Paulk*, 566 U.S. 356, 367-368 (2012) (citing *Briscoe v. Lahue*, 460 U.S. 325 (1983) (absolute immunity applies to both trial testimony and grand jury testimony, and to law enforcement witnesses as well as lay witnesses).

    **E.**    **Defendant Krajnik Is Protected by Absolute Immunity and/or Qualified Immunity.**

Defendant Krajnik is entitled to absolute immunity for actions performed in the scope of her employment as a forensic scientist with the Illinois State Police. *See e,g Newton v. City of New York* 738 F. Supp. 2d 397, 406-409 (S.D.N.Y 2010) (granting absolute immunity for government forensic scientist who conducted DNA testing). Absolute immunity applies to a government

official's conduct when: (1) the official's conduct "was of a type traditionally protected by common law immunity," (2) public policy considerations favor granting of immunity, and (3) other remedies exist against the official. *Id.* at 406.

In *Newton,* Patricia Ryan ("Ryan") was a laboratory scientist employed by the Office of the Chief Medical Examiner of the City of New York, who tested DNA evidence from a rape kit in Newton's post-conviction proceeding. *Id.* at 401. Ryan's testing did not detect the presence of sperm in the rape kit and was therefore unable to rule out the defendant, Newton, as the attacker. *Id.* Subsequent testing (not performed by Ryan) identified sperm in the sample, and conclusively established Newton's innocence. *Id.* In discussing Ryan's eligibility for absolute immunity in Newton's Section 1983 suit for his erroneous conviction, the court found that "[t]here is no question that Ryan — as a forensics scientist charged with testing the evidence against Newton — was "intimately associated with the judicial phase of the criminal process." *Id*. at 407. Further, "[t]he determination of guilt is perhaps *the* defining characteristic of the criminal process and the [scientific] analysis at issue was specifically intended as a gateway to demonstratively inculpate or exculpate [the defendant.]" *Id*. Here, Defendant Krajnik tested DNA evidence from the blood stains at the crime scene, a function similar to Ryan in *Newton:*

> Because "absolute immunity ... extends to non-prosecutor officials when they are performing 'functions analogous to those of a prosecutor[,]'" Ryan is entitled to the same protections for her conduct as the state's advocate in Newton's post-conviction proceedings. That her findings could have led to Newton's exculpation does not undermine the adversarial nature of her position: a prosecutor is similarly expected to seek truth above all, and to disclose information that may exonerate a defendant. The Second Circuit has confirmed that '[t]he advocacy function of a prosecutor includes seeking exoneration and confessing error to correct an erroneous conviction." Thus, while forensic analysis may sometimes be viewed as an investigatory activity, here it served as an advocacy tool.

*Newton,* 738 F. Supp. 2d at 408. Public policy considerations weigh in favor of absolute immunity for Defendant Krajnik. The court in *Newton* expressed concern that "if laboratory scientists were

13

exposed to liability on the basis of their alleged forensic testing errors, every criminal case involving biological evidence would become a breeding ground for additional litigation against the state and its actors." *Id.* at 409. Indeed, "the primary purpose underlying the long-standing tradition of absolute immunity for judges, prosecutors, and witnesses thus applies with equal force to forensic scientists — the ability to "perform their respective functions without harassment or intimidation." *Id.* Lastly, other remedies such as professional disciplinary action and criminal charges exist "for willful deprivations of constitutional rights." *Id.* at 410. Here, Plaintiffs' do not even allege that Defendant Krajnik's testing was incorrect, as was the case with Ryan. Nor have they established that labeling one report as "draft" and updating the suspect field for a second report were material to the jury's finding of Christopher's guilt, which led to his incarceration and the purported deprivation of Plaintiffs' rights. On balance, the analysis favors of finding of absolute immunity for Defendant Krajnik.

If, however, the court finds that Defendant Krajnik is not absolutely immune, qualified immunity provides that "government officials performing discretionary functions […] are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). Qualified immunity is effectively immunity from suit, and the Supreme Court has urged that it "be resolved at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 233–34 (1991). While qualified immunity questions cannot be typically be resolved at the motion to dismiss stage, the allegations of Plaintiff's Complaint present an early opportunity to resolve this issue.

Here, Plaintiffs do not contend that the *results* of Defendant Krajnik's forensic testing were wrong, rather they take issue with the way the reports providing the results of that testing were

14

labeled. Specifically, Plaintiffs claim that defendant Krajnik "tampered with the Laboratory Reports by submitting one labelled "draft" and submitting another one after the Grand Jury hearing to the other Defendants." ECF No. 1 at ¶ 48. Further, Plaintiffs claim Defendant Krajnik "was directed by the other Defendants to mark the first Laboratory Report as a "draft" and remove Kimberly Vaughn as a suspect on the second Laboratory Report, though the scientific findings in the report were identical. These changes were inappropriate and unethical and not supported by the evidence." *Id.* at ¶ 49. However, Plaintiffs have failed to establish that Defendant Krajnik's alleged "tampering" with the laboratory reports had any effect on Christopher's conviction or on Plaintiffs' purported rights. Indeed, when Christopher appealed his conviction, the Illinois Appellate Court discussed the forensic evidence at length, including testimony from Christopher's own expert that Christopher's version of events was not supported by the forensic evidence. *People v. Vaughn*, 2015 IL App (3d) 120996-U at *P71 ("That the State was able to elicit from the defense's own witness that defendant's explanation for what happened did not comport with the physical evidence does not serve to transform this into prosecutorial misconduct."). Plaintiffs merely allege that Defendant Krajnik labeled one report as a draft and updated the "suspect" field of her second report. But these allegations do not state a claim or, at the very least, show that Defendant Krajnik is entitled to qualified immunity because her conduct did not violate a clearly established statutory or constitutional right.

## CONCLUSION

For these reasons, Defendants State of Illinois, Gary Lawson, and Kelly J. Krajnik respectfully request that this Honorable Court grant their motion to dismiss all claims against them in Plaintiffs' Complaint.

15

Respectfully submitted,

KWAME RAOUL            By:    /s/ *Marci L. Sahinoglu*
Attorney General of Illinois            Assistant Attorney General
                                                                           General Law Bureau
                                                                            100 West Randolph Street, 13th Floor
                                                                            Chicago, Illinois 60601
                                                                            (312) 814-3131
                                                                            Marci.sahinoglu@ilag.gov

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing **STATE DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT** was served on all parties at the electronic addresses provided through the Court's electronic monitoring CM/ECF system and via e-mail on November 4, 2022.

                                                                            /s/ *Marci L. Sahinoglu*
                                                                            MARCI L. SAHINOGLU